Our next case for today is 2018-30243 Halliburton Energy Services et al. versus Julius Barber et al., and also consolidated with 18-30413 and 18-30533. You may proceed. May it please the Court. My name is Michael Chase. I'm here today appearing on behalf of a group of Menhaden fishermen who were inexplicably denied, cut out of the BP settlement, and then have once again been cut out of the Transocean and Halliburton settlement. The number of the case is that Halliburton and Transocean agreed with the class representatives to compensate these claimants who were clearly within the class definition, and then they turned the task over to the claims administrator to make sure that all the class members were fairly compensated or got their fair share. But not only did these claimants not get their fair share, they got nothing at all. And they were denied for a reason that's nowhere to be found in the settlement agreements. And it's based on the supposed authority of the claims administrator that is nowhere to be found in the settlement agreements. And it was done without giving them any effective notice of what was going on. Was PTO 60 served on counsel for these Menhaden fishermen? Your Honor, these Menhaden fishermen were unrepresented at the time PTO 60 was entered. I didn't hear you. I'm sorry. They were unrepresented. Because what? You said they were just unrepresented. Yes, Your Honor. So your claim is that they get no notice, and you're making that claim to us as a matter of factual accuracy. You're claiming to us that they had no notice of PTO 60. Well, that was the submission to the claims administrator. It was never challenged by the claims administrator and to the magistrate judge on the appeal. This puts them in the exact same position as the Zatz restaurant that we referenced, which was the district court said they got no effective notice because the PTO 60 was emailed to the attorneys. It was sent out by mail, I think it was, to unrepresented people who had opted out and stated at the time of the opt-out that they were unrepresented. And it was sent to the Filing and Serve Express, which only went to counsel. So Zatz restaurant was unrepresented at all relevant times, and they did not get any of the direct notices. So the only notice was the posting of PTO 60 on the court's website, and the district court said that was not effective notice as to them. These appellants, these claimants are in exactly that same position. They were unrepresented and so got no notice through any of those direct means. And not only that, but when the settlement notices went out, it directed people not to the court's website, but it directed people to the settlement website. So the posting of PTO 60 on the court's website being their only notice was even less effective for these than it was for Zatz restaurants, as to which the district court said they got no effective notice of PTO 60. The claims administrator asked for Lee to appear as amicus, but takes no position on this, on the merits of our case, which means that they offer no legal defense of what the claims administrator did. Halliburton, as an appellee, basically doesn't challenge the merits, but they contend that we have no right to appeal, which of course is doesn't apply, that only applies to the appeals, the two appeals from the claims administrator or the magistrate's judges ruling on the claims administrator's decision. It doesn't apply to the Rule 60B motion that the district court denied. So it doesn't apply to that appeal. The bottom line, though, on the right to appeal, though, is that there was no clear and unambiguous waiver of a right to appeal in this decision. And the case law is clear that before a right to appeal can be waived by a settlement agreement, it has to be clear and unequivocal, a clear and unequivocal waiver, and that was not the case here. If the district court had decided the issue when presented, which was this issue of did the claims administrator have the authorities to make PTO 60 compliance a requirement for recovery under the Halliburton Transocean Settlements, which had already been agreed to before PTO 60 was ever entered, that was the issue before the district court in considering whether to approve the distribution model. The court said I'm not going to decide that issue right now. It can be decided at a time when the, it's a, when claims determinations are concluded, which is a little bit ambiguous there. So in any event, if the court had decided it when presented, then it clearly would have been appealable. The fact that the court referred it to later, we brought it later as the court instructed, and now they, Halliburton says it's not appealable. It cannot not be appealable because it's an Article III issue. The approval of the distribution model was the district courts, within the district courts, by the way, and they did not, there was no referral order referring that type of decision to the magistrate judge. So it doesn't come within this provision in the settlement agreement that claims decisions about the amount of a payment are not appealable. This, in event, this didn't involve the amount of a payment. They were completely cut out and said you're not eligible to recover because you didn't comply with PTO 60. How do we distinguish the Barrera case? Do you know the Barrera case? The fishermen didn't comply with the PTO 60 and their claims were dismissed with prejudice. That's correct. That didn't apply, that didn't involve this Halliburton Trans-Ocean Settlement Agreement. That applied there trying to proceed in the MDL with individual or class action lawsuits against BP. And so how is that pertinent? Because this does not concern whether our clients could file suit in the MDL and pursue individual lawsuits. This concerns whether they're covered by the settlement agreement, which was entered into before PTO 60 was ever entered. So it's apples and oranges. There still must be compliance with PTO 60, is that correct? Whether it's one or the other, whether it's the Barrera circumstance or the one here, isn't the court's ruling that there must be compliance in order to participate? There must be compliance in order to pursue a claim in the MDL individually against, this is a settlement though. This case was settled and there was nothing in the settlement agreement that said you have to have a pending lawsuit, you have to comply with some subsequent order that's never even been entered. So this was a completely separate issue. So PTO 60, putting PTO 60 in there. But the language of the settlement agreement says that the claims administrator will set the standard to establish the claims. That's correct. The standard to establish a claim does not give him the authority to redefine the settlement class or to put requirements for recovery into the settlement agreement that are not there. What that means is establishing a standard for a claim means who has a claim? The claim is, according to the settlement agreement, anybody who's in the new class. Our clients undisputedly are in the new class. So they have a claim. How do you establish the claim? The way you establish a claim when the requirement is to be in the new class is you show, prove, or establish that you're in the new class. And so that was what the claims administrator was tasked to come up with. Some method, what proof are you going to accept that some claimant is actually in the new class? For instance, how do you know that somebody's a property owner within the zone? Well, they have to present a deed. How do you know that somebody is a charter boat, or excuse me, a commercial fisherman boat captain? They have to present their license. How do you know they're a boat owner? They present the document, title documents, and show that they're home ported within that area. That's what the standard for establishing a claim means. It doesn't mean that you have to require blanche authority on the part of the claims administrator to add these requirements in later to cut people out who are clearly in there at the time the settlement agreement is entered into. Mr. Perez, didn't PTO 60 apply to unnamed putative class members? Again, yes, with respect to being able to come into court and pursue litigation. This is not about our attempt to come into court and pursue litigation in the MDL. It's about our claim to be included in a settlement agreement that was entered into and named these people before PTO 60 was ever entered. Was there ever an attempt to comply with PTO 60 ever? At the time, the first notice that PTO 60 was a requirement to participate in the settlement was in the distribution model. That was entered long after the deadline. And no objections were filed to the distribution model? Yes. These objections were filed to the distribution model on the basis of the PTO 60 requirement by your client? There were. Not by our clients, but by a number of 74 other people who did file objections. And the court said it's not appropriate to decide it at this point. Whether the claims administrator had that authority, that issue is to be decided later on after claims determinations are concluded. And so, in accordance with the court's instructions, that's when we're doing it, after claims determinations have been concluded, at least with respect to our clients. But it became clear from the distribution model itself that you had to comply. That's true, but at that point Why wasn't an effort made? It was impossible to comply because the deadline had passed, long passed. But at least that here's our stuff, we're late, but other people have come in like that, and we have cases pending about that, about whether or not they didn't know in time and should we excuse their timeliness. We've had three or four cases about that. Including Zach's Restaurant, which said that they were excused because they  So, but the point is that that is not, that has nothing to do with the fact that they were covered. They were named as class members in this settlement agreements, and there was no requirement that you had to have a pending claim, pending lawsuit. In fact, the settlement agreement itself contemplated that there were claimants who would not have pending lawsuits because it said if either any claims that have been asserted or that could have been asserted, the statute of limitations is told. So the settlement agreement itself contemplated that there would be claimants who did not have pending lawsuits, but they're covered. That is not, that's a contractual concession on the part of the parties that we're not, they don't even have to offer proof of harm. All you had to do was allege proof for the commercial fisherman. All you had to do was show that you fished in that area. No proof whatsoever was required of harm. That's as much a requirement to get punitive damages as anything, yet the settlement agreement says we don't make you show proof of harm. So they were, the settlement agreement, the determination of who recovers under the settlement agreement is defined by the definition of the class. The definition of the class said if you are a commercial fisherman who fished in these waters during this relevant period of time, you are in the class. You're entitled to recover unconditionally. No further requirements, no exclusions, no qualifications. You're entitled to recover. The claims administrator comes in after the fact, after it's too late for these people to do anything. I don't think you can, it's fair to say, well you could have come in and asked the court for some extraordinary relief in letting you file this thing months and months later after the settlement agreement. I don't think that's a reasonable requirement to place on somebody, particularly where they're unrepresented up to essentially the time when the claims had to be submitted. In fact, right after the settlement agreements were preliminary approved, the court gave preliminary approval to the notice that was to go out. This was in April. It was after PTO 60, but before the deadline. So in April, the court gives approval to the notice that's going to be sent out to all these claimants. And it says essentially for our people, all you have to do is file a claim. Now, the court's expert said every important detail that these claimants need to know is included in the notice. If PTO 60 requirement, I have to comply with that, or have a pending lawsuit was a requirement, I think that's pretty important. But the notice said nothing about that. What does that say? That says that at the time they prepared this notice, at the time the court approved the notice, nobody had in mind that you had to have a pending lawsuit. Nobody had in mind that you had to comply with PTO 60 to recover under this. This is something that the court administrator just came up with out of thin air after the fact. I can't remember why I said it. The fishermen concede that they received notice of the distribution model on June 13, 2016, which expressly stated that they would need to show evidence of compensatory damages and warned that failure to comply with PTO 60 would result in an award of zero dollars. That you concede that you received notice of the distribution model with two weeks left to go ahead and file a lawsuit. No, there was no two weeks left to file a lawsuit. The deadline for filing a lawsuit under PTO 60 was months a month or so earlier, if not more. It was May 2nd, I believe. So, at this time, they're out of luck. They have no chance to go at PTO 60. As far as they, a reasonable unrepresented person such as themselves would think. They didn't, like, throw themselves on the mercy of the court and say, look, we don't understand how to do this. Are we too late? There's nothing, no placeholder thing that they filed. To answer that question, if you put yourself in the position of the Minhayton fishermen, that would be saying, given the opportunity to come into court and file an individual lawsuit, I've got to come into court, hire a lawyer, file an individual lawsuit when I might recover the damages that was set by the claims administrator for a fisherman was $4,000. So, to do that when I'm already covered under a settlement agreement that says I can get that much money with doing nothing but having to submit a claim, it would be reasonable for a person to say, I'm not going to fool with the, go to the trouble of filing a lawsuit, hiring a lawyer, and spending all my $4,000 on a lawyer when I've got a guarantee here in black and white that I'm going to get money from TransOcean and Halliburton. One more question. Does the provision, I mean, doesn't the settlement agreement though say including all potential claimants who have standing to bring claims under the general maritime laws interpreted by Robin Strydock? Potential claimants. Everybody. Who have standing. Who may have standing. What that was, the whole purpose of this was they included a bunch of people that had no standing under general maritime law. Had they filed a lawsuit, they would have been kicked out of court because there was no precedent in this circuit for subsistence fishermen to have maritime law standing to file a claim for damages, much less punitive damages. So, what they tried to do was include everybody who may have standing, and there were some, I think some decisions from maybe the Ninth Circuit that said subsistence fishermen had standing. Commercial fishermen don't have clear standing. There's no definitive ruling of the Fifth Circuit that says commercial fishermen have maritime law standing. And so that was just an attempt to as the court said, to be liberal and try to bring in everybody who might have standing. And that's what that may have standing means. It didn't suggest that if you were in the class, we're going to later say, oh, you don't have standing. No, we're bringing everybody. And it's not, it wasn't the standing that made the class. It was the definition that made the class which included people who didn't really have standing. Thank you. May it please the Court. Good morning, Your Honors. My name is Alan York, appearing this morning on behalf of the Halliburton Appellees. As the Court is aware from reviewing the docket, the settler is here this morning representing Transocean. But the arguments that I'll be making this morning are on behalf of both the Halliburton Appellees and the Transocean Appellees because the settlement agreements in this case are virtually identical. And both Transocean and Halliburton do have a limited interest in this appeal. That interest being the inclusion of the waiver of appellate rights that is included in both settlement agreements. The real issue for us here today is an issue of getting a benefit of our bargain. This Court has stated on numerous occasions that the interpretation of a settlement agreement follows the general principles of contract law. The contract law would say that each provision of a settlement agreement or a contract needs to be interpreted in such a way as to give effect to all of the provisions. And in this case, we believe that the language that specifically addresses the appellate waiver covers the claims that are being raised before this Court today. And the application of that provision should result in a dismissal of this appeal. As the Court is aware from our briefing, the settlement agreement contains specific language that says that the Court's decision on any appeal involving the amount of any payment to any individual claimant other than a determination that a claimant is not entitled to any payment due to a failure to meet the class definition shall be final and binding and there shall be no appeal to any other Court including the U.S. Court of Appeals for the Fifth Circuit. Counsel in his argument stated that this was not a clear and express waiver of appellate rights. We certainly disagree with that. The language in this settlement agreement was intended specifically to address this type of issue. The determination that was made by the claims administrator was that these particular claimants were entitled to zero damages. There was a claim determination made by the claims administrator through the distribution model. And in this situation, that determination as to the amount that was to be paid or not paid to these claimants is specifically and expressly addressed in the settlement agreement. I would point out a couple of other procedural issues in terms of the timeline. And Judge Elrod, Judge King, I agree with much of what you've said in terms of the lack of action by these particular claimants. But I've been involved in this case from the beginning and I'm going to try to keep my focus on the issue that is relevant to Halliburton today. But the PTO 60 issues are important in the larger context of the timing here. When the distribution model was issued, it's important to note that these claimants at that point, as Judge King pointed out, had notice of the need for PTO 60 compliance. Despite that fact, there was no effort raised to go to the court, to Judge Barbier, and ask for leniency saying that this is the first we knew that we needed to comply with PTO 60. Please let us file our PTO 60 compliant complaint. Appellants mentioned the Zach's Restaurant issue, but Zach's Restaurant was one in which the district court gave leniency for the allowance of a complaint. And there's no evidence in the record that Judge Barbier might not have considered that same leniency in this situation been raised. But more importantly, what else didn't these claimants do? These claimants didn't file any specific objections to the distribution model itself. They didn't file any objections to the final settlement agreement at the time that the settlement agreement was approved. They didn't raise an appeal from the settlement agreement. The settlement agreement having incorporated by reference the distribution model that had been on file since June. When were they first represented? The record is not clear on that, Your Honor. As far as we can tell, these were unnamed class members. They never had their own individual complaint. Their allegation is certainly made in appellant's brief that they were unrepresented, but at some point they became represented. That much is clear because a claim was filed in the Hesse and Transocean settlement. Arguments were made to the magistrate judge who was considering the appeals of claim determinations. So at some point they became represented. The record isn't clear when that was. It seems that June 13th they conceded that they received the notice, and then there were these other rulings all through 16 and 17, at least through February of 17. But is it really, is that fair to hold them to that given their position? Is there some sort of fundamental due process concern holding them to these standards that we've been applying given their situation? I think there is, Your Honor. It's a difficult conclusion to come to, but I think that it is fair in the grand scheme of things. This is not a situation, for example, where after all the settlement payments have been I never received notice of any of this. I was completely left out of the process. These individual claimants were a part of the process. And I would say, I would also add that given the history of this case, and this is something that's referenced in the record, there should have been a heightened degree of diligence here. These Menhaden fishermen were specifically excluded from the BP settlement. Unlike other commercial fishermen, they didn't have a right to simply go in and make a claim in the BP settlement to obtain funds. But the Halliburton and Transocean settlements, because they were intended to be overarching, universal settlements, specifically included Menhaden fishermen. And as a pragmatic point, if I were a claimant who had been excluded from another settlement, who suddenly was aware that I was capable of obtaining money from this settlement, if I did what I needed to do, I would be hyper-vigilant. As opposed to what counsel is saying, that why would these people go in and spend $4,000 to preserve their claim, as soon as I received that notice of the distribution model that said I had to comply with PTO 60, I would have been filing something with the court to make sure that I was preserving my claim, knowing that I had been excluded from a prior settlement. So, is the result harsh? Potentially. It is. But is it what the parties bargained for? It absolutely is. And in this situation, again, to some extent I'm proud to say that the appellate waiver provision in the Hesse and Transocean settlement agreements has been largely successful. Unlike the BP settlement agreement, this court has not been inundated with individual claimant appeals from the settlement, because those individual claimants have recognized the limitation. But this is exactly what this clause was intended to prevent. It was intended to make sure that once Halliburton and Transocean executed their settlement agreements, paid the money that they were required to pay under those settlement agreements, that essentially we were done. But the inaction by these particular claimants and their attempt to subvert the intent of that settlement agreement has brought us to the court today. There is one point that I do want to specifically address, which is the argument that somehow the Rule 60B motion falls outside of the appellate waiver and creates something of a different animal. And I think that this Court's opinion in Campbell-Harrison, a procurement opinion, Judge Alrod, that you were on the panel answers that question. In Campbell-Harrison, the Court had previously considered two appeals regarding an attorney fee issue and had held that those claims were barred by the appellate waiver that was included in the agreement. After the Court's ruling on that, the parties went back and one of them filed a Rule 60B motion attacking the specific order from which the attorney's fees had arisen and then attempted to appeal the denial of the Rule 60B order, much like what has happened here. The Rule 60B motion here attacked the distribution model. And the distribution model was the distribution model that ultimately determined that these claimants were entitled to no recovery. So simply dressing up their attack in the guise of a Rule 60B motion does nothing to change the nature of the attack, which is an attack on the fact that they got a claim determination that they were not entitled to recover any damages. Does it matter, though, that the language of the waivers is different? It doesn't, Your Honor. The failure to meet the class definition is not there. Right. In the Transocean agreement, that parenthetical is not there. And I think timing explains that more than anything. The timing of the Halliburton settlement agreement was two days, I believe, prior to the date that the Court issued its findings of fact and conclusions of law that determined that neither Halliburton nor Transocean were grossly negligent. But at the time that Halliburton entered into its settlement agreement, it was still possible that gross negligence would have been found. And if it had been found, there would have been a natural incentive for certain parties to try to find ways out of the settlement agreement to try to maximize their recovery. That parenthetical in the Halliburton agreement was intended as a protection for Halliburton so that if there were any rulings that a certain party or group of parties was outside the class definition, Halliburton could appeal that to this Court to try to capture as many claimants as possible in the settlement agreement. The Transocean settlement agreement was issued, was executed after the findings of fact and conclusions of law, when it had already been determined there was no gross negligence, that same protection wasn't necessary for Transocean. With that, I will happily concede the rest of my time to the Claims Administrator who can talk more specifically about the basis for the determinations. Thank you. Good morning, Your Honors. Rick Stanley. I'm here on behalf of the new Claims Administrator. At this time, Mr. Patrick Juneau. At the time of these events, it was Mr. Michael Juneau. The two settlement agreements at issue here required Mr. Juneau to develop a distribution model for the punitive damages claims. And the model was not only to include standards for who could recover and what they needed to prove to recover, but the both agreements required maritime law standing to recover punitive damages. And I don't think anyone argues the fact that that meant that any claimant that came to the settlement had to have a compensatory element either proven by a settlement or some resolution of their claim or by at least an allegation in a lawsuit. So, that is what Mr. Juneau faced in terms of constructing a distribution model. It is true that after the settlement agreements were confected, PTO 60 was issued and PTO 60 was relevant because PTO 60 said for B1 claimants, we are going to dismiss these generalized allegations and anyone who is riding the coattails of those generalized allegations has to file at this time an individual lawsuit if they want to preserve their claims. Now, that caught in the net, if you will, these Menhaden fishermen who were unnamed class members who were using, I guess, American pipe reliance on the B1 complaint, the B1 complaint was no longer going to exist and so therefore PTO 60 would have required them to step forward to file an individual lawsuit. This is a dumb question. These people would have been class members for the B1 class. That's correct. Okay, so then what happens is that suddenly that group is dismissed and we're going to in effect start over and you've got to file a claim or you've got to litigate your right to in effect to compensatory damages before we're going to give you these punitive damages. Correct. So they, in a sense, they were in the lawsuit, then they were out of the lawsuit, then they're in the lawsuit or should have been. Procedurally, the B1 complaint had a generic class action allegation that would have covered these folks. Okay, that's what I thought. That class was never certified, but it was present. It was alleged. The PTO 60 dismissed that allegation without ruling on the class action and said, now you must come forward with an individualized suit for compensatory damages if you want to proceed. And so that was the nature of PTO 60. So when the claims administrator on June 13th issues the distribution model, he is balancing the dictates of the settlement agreements, which require maritime law standing, with PTO 60, which required that you can no longer rely on a B1 complaint because it's been dismissed. You now have to file an individual suit. So he was careful to put into the distribution model warnings and even into the claim form a warning that if you are subject to PTO 60, you must file an individual claim. If you did not comply with PTO 60, your award will be zero dollars. So he tried to put everyone on notice, even if you hadn't gotten notice of PTO 60. And there was a lot of effort to make notice there. But in the claim form itself, it highlighted this issue. These folks admit they got that claim form. They filed their claim, but they filed it without compliance with PTO 60. The distribution model was approved by the district court. There was no opt-out by these folks. There was no objection by these folks. There was an objection by others. Seventy-four others did object to the PTO 60 requirement. But afterwards, they settled, got a compensatory amount. They got their punitive amount. These folks didn't raise a specific objection. And to Judge Elrod's point, they didn't file a lawsuit. They didn't ever wake up and say, gosh, we need to file a lawsuit. I don't know when they became represented. So I don't know when they would have been subject to getting counsel who may have said, hey, we should file a lawsuit and try to get this done. But as of this moment, there has been no lawsuit filed. So the claims administrator, following the distribution model that he had published and that the court had approved, set these claims at zero. What followed next, of course, was the objections and the appeals. And one of the contentions is, well, we never got a chance to raise this issue. But under the referral order, Judge Barbier said that anyone who disputes the claims award determination does have a right of limited judicial review. It's going to be to And Magistrate Judge Wilkinson issued an opinion that dealt with the PTO 60 issue, dealt with the notice issue, dealt with the due process issue. And so he rejected all of those for one group, and then when the next group came before him, he relied on his prior opinion to reject those. So in terms of, that's the procedural background. This is a limited fund settlement. In other words, there's no reason other than the fact that we are bound, judicially, to follow the dictates of the district court, follow the orders of the district court. No one, these folks over here at this table, don't have to pay any more money or any less money if these people recover or don't recover. They've already paid their money. So it's really not a financial issue. It's just a question of whether or not these claims can proceed under the rules that we set forth in our distribution model and that were approved by the district court. And thus far, the rulings have been unfavorable to the folks on my left, and so that's where we are as claims administrator and why we take really no position on the merits of their claim. Our job is simply to administer the settlement and get it to a conclusion. But this is why we did what we did and how we got to where we are. And that's really my purpose for being here, that and to answer any other questions that the court may have about the process or what we did as claims administrator. I think we have your argument. Thank you. Thank you, Your Honor. Thank you. If that pleases the court, let me address very briefly the issue of the appealability matter. The settlement agreements speak for themselves, and what they said was what was not appealable was a determination of the amount of recovery. Here, the recovery was determined to be zero. The amount was zero. What is clearly appealable within the agreement itself, within the contract, the benefit of the bargain was a determination of a zero payment for disqualification from the class. And that is exactly what occurred in this case. The claims administrator determined in interpreting a contract to apply principles of standing in common law under maritime law to these individual claimants who in September of 2015 were part of an agreement, a settlement agreement. And as Judge King pointed out, until PTO 60 was issued in March of 2016, they had a viable claim under a contract that already existed. They were vested in that right to a settlement. The deadline under PTO 60 was May 2nd. The distribution model was in June. The very first reference to any requirement of these litigants, these claimants to comply with PTO 60 was more than a month after the deadline under PTO 60. Was the claims administrator authorized to make some sort of distribution model? In fact, he was required to do such, but what he was not allowed to do was retrofit some redefinition of the class. No one disputes, no one disputes that these claimants are part of this class. They qualify. And they had a vested right to a recovery that was deprived of them by a PT order that never got to them. It's not disputed. Until June of 2016, six weeks after the deadline had passed. That is the undisputed record before this court. I'm not following you. The pretrial order, Your Honor, was in March. The deadline was in May, and the distribution model was distributed in June. And the distribution model was the very first reference in this settlement on punitive damages against Halliburton and Transocean that PTO 60 was a requirement. As you pointed out, Your Honor, these folks were part of the B1 class. They had a claim. It was taken from them. Now, what authorized... Well, it was taken from them. They had a claim because they were part of the B1 class. And the judge said, okay, we're not going to do it that way anymore. And that was why PTO 60 was critical. And they got notice of PTO 60. Yes, ma'am. After the fact. After the deadline had passed. According to my notes, they concede that they received notice of the distribution model on June 13, 2016, which expressly stated that they would need to show evidence of compensatory damages and warned that failure to comply with PTO 60 would result in an award of zero. What's wrong with that? PTO 60 on its face, Your Honor, said the deadline to submit an individual claim or opt out was May 2nd. That's what the order read. That's the notice they received. After the fact. Other people who got it after the fact did something then. And then they got some mercy sometime. They did, in fact, Your Honor. And the Salas objectors, the 74 objectors who were similarly situated to these claimants, made an objection. And what did Judge Barbary do at the fairness hearing on the approval of distribution model? He concluded unequivocally, that appeal is not ripe for consideration. I will consider it after a claims administration had occurred. So there's an exercise of futility, Your Honor, that this Court has to recognize. Who is to say that he would have taken a different position if these menhaden fishermen had done the exact same procedural thing this Court is suggesting that those folks did, in fact, do? And the Court did not take action on that appeal. It is unequivocally the case. This is very similar, Your Honor. Very similar to the Bonere Secure case. In which the benefit of the bargain was in that case, with respect to common law causation. And they're attempting to apply that here. The issue of could have or potential, those are not exclusive terms, Your Honor. Those are inclusive terms. Because there are a number of claimants receiving punitive damages in this recovery, who do not have legal standing under the Dry Dock case. They're defined by contract. It's a contractual concession. We are mixing and matching common law standards and issues related to contract. If I could sum up just very briefly, Your Honor. This is a situation, Your Honor, candidly, when the Court looks at the briefing and the record, you're going to find this is a matter of contract and there's a situation here where they're attempting to inject in the contract terms that simply do not exist. The Court of Appeals is obligated, Your Honor, to consider there was an obscure and a bit moving target created by the Claims Administrator here. These folks were excluded from the BP settlement and the Claims Administrator here says in the brief, for whatever reason, no one knows. But these folks, the poorest of the claimants, are going to take nothing, nothing from this and they were directly affected by this environmental disaster. And clearly, clearly, we recognize the legitimate authority of the Court to handle its docket and to handle claims that are quite voluminous, but that does not substitute for fundamental fairness and due process. And that is precisely what's happening here. Thank you. Thank you, Your Honor. This includes the cases for this week's session. The Court will stand adjourned pursuant to its usual order and the Court appreciates the arguments in the case today. Thank you.